UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

HOLLY SHALOM,

        **Plaintiff,**

   - against -

HUNTER COLLEGE OF THE CITY
UNIVERSITY OF NEW YORK

        **Defendant.**

------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/13/14
```

**OPINION AND ORDER**

**13-cv-4667 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Holly Shalom, a student at Hunter College's Speech-Language Pathology Program ("SLP Program"), brings this action against Hunter College of the City University of New York ("CUNY") alleging sexual harassment, hostile educational environment, and retaliation by CUNY.[1]  Defendant now moves for summary judgment on all claims.

Plaintiff commenced this action in state court, pursuant to Section

---

[1]    CUNY is the proper defendant in this case.  While Hunter College is named as a defendant, it is a senior college within the CUNY system and has no separate legal existence.  *See* N.Y. Educ. L. §§ 6202(2), 6203, 6206.

1983 of Title 42 of the United States Code ("Section 1983"), against three CUNY

employees in their individual capacities for violation of her Fourteenth

Amendment rights concerning accommodation for her disabilities, and against

CUNY for discrimination and retaliation in violation of Title IX of the Education

Amendments of 1972, Section 1681 of Title 20 of the United States Code ("Title

IX").[2]  Defendant removed the action to this Court.[3]  On April 23, 2014, plaintiff

withdrew her Section 1983 claim.[4]  Defendant now moves for summary judgment

on the Title IX claims.  For the reasons stated below, defendant's motion for

summary judgment is GRANTED.

## II.    BACKGROUND[5]

### A.    Speech-Language Pathology Program

In Fall 2009, Shalom enrolled in the SLP Program to become a speech

---

[2]       *See* CUNY's Local Civil Rule 56.1 Statement in Support of Its Motion for Summary Judgment ("Def. 56.1") ¶ 82.

[3]       *See id.* ¶ 83.  *See also* No. 13 Civ. 4667 [Dkt. No. 1].

[4]       *See* Def 56.1 ¶ 85.  *See also* No. 13 Civ. 4667 [Dkt. No. 33].

[5]       The following facts are derived from the parties' Rule 56.1 statements and supporting documents. The facts are undisputed unless otherwise noted; where disputed, they are construed in the light most favorable to the plaintiff. *See, e.g.*, *Federal Ins. Co. v. American Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

language pathologist.[6]  Approximately ninety percent of the students in the SLP

Program are women.[7]  Students in the SLP Program are required to complete a

variety of courses and clinics under the supervision of licensed and certified

speech-language pathologists.[8]  Students must comply with the professional

standards of a speech-language pathologist, preserve client confidentiality in

accordance with national standards, maintain a professional demeanor, and dress

professionally when in the Hunter College Center for Communication Disorders

(the "Center") or any other clinical setting.[9]

Supervisors evaluate the students using a Knowledge and Skills

Assessment form ("KASA form") on a scale from zero through four.[10]  To be

successful, students should receive grades above 3.0.[11]  At the end of each clinical

practicum, the Clinic Director gives each student a final score between zero and

100, based on the KASA forms, other evaluations from supervisors, and the Clinic

---

[6]       *See* Def. 56.1 ¶ 1.

[7]       *See id.* ¶ 2.

[8]       *See id.* ¶ 3.

[9]       *See id.* ¶¶ 4-7.

[10]      *See id.* ¶¶ 8-9.

[11]      *See* Declaration of Donald Vogel ("Vogel Decl.") in Support of
Defendant CUNY's Motion for Summary Judgment, Clinic Director of the Hunter
College Center for Communication Disorders, ¶ 12.

Director's own observation of the student's adherence to privacy rules and clinical responsibilities.[12]  A score above 82.5 will result in a passing grade for the course ("Credit").[13]  A score below 82.5 will result in "No Credit," which requires the student to retake the practicum before continuing with the SLP Program.[14]   If the student receives No Credit twice, the student will be dismissed from the SLP Program.[15]

## B.    Shalom's Spring 2010 Semester

Shalom enrolled in COMSC 728, a clinical practicum, under the supervision of Clara Blinder.[16]  During the Spring 2010 and Fall 2010 semesters, Donald Vogel was the SLP Program's Clinic Director.[17]  In April 2010, Vogel offered Shalom an opportunity to work with a client but Shalom declined because of upcoming final examinations.[18]  Shalom was the only student in COMSC 728 to

---

[12]    *See* Def. 56.1 ¶¶ 10-11.

[13]    *See id.* ¶ 12.

[14]    *See id.* ¶ 13.

[15]    *See id.* ¶ 14.

[16]    *See id.* ¶¶ 16-17.

[17]    *See id.* ¶ 18.

[18]    *See id.* ¶ 19.

decline an offer to work individually with a client.[19]  In addition, Shalom was the last student to be offered a client.[20]

Shalom claims that Vogel made comments concerning her hair, attire, or appearance throughout the semester.[21]  According to defendant, part of Vogel's job is to enforce the Center's dress code.[22]  Shalom claims that Vogel's comments and actions fell outside the guidelines and were unlike those he made to other students.[23]  For example, Shalom asserts that Vogel demanded that Shalom come to his office for daily individual physical appearance inspections.[24]  However, Shalom admitted that she does not remember if Vogel asked for an inspection more than

---

[19]    *See id.* ¶ 20.

[20]    Shalom's Local Civil Rule 56.1 Counter Statement in Opposition to Defendant's Motion for Summary Judgment ("Pl. 56.1") ¶¶ 19-20.

[21]    *See id.* ¶ 21.  Plaintiff testified that Vogel:  (1) "Did not want [Shalom] wearing [her] hair curly or in a ponytail."  Deposition of Holly Shalom, Exhibit ("Ex.") 1 to Declaration of Thomas Ricotta ("Ricotta Decl."), Plaintiff's attorney ("Shalom Dep.") at 75, 80-81; (2) Did not like Shalom's clothes and told her that her clothes were "sloppy."  *Id.* at 75, 83; (3) Requested that Shalom come to his office on a daily basis for a hair and clothing inspection.  *See id.* at 75, 83-84.; (4) Complained that the "women were all wearing pants instead of dresses" and that "Orthodox [Jewish] women in [the] program . . . were all wearing black instead of colors."  *Id.* at 76, 95-96.

[22]    *See* Def. 56.1 ¶ 21.

[23]    *See* Pl. 56.1 ¶¶ 21-22.

[24]    *See id.* ¶ 22.

once.[25]

Blinder assigned Shalom a 3.04, 3.27, and 3.41 for "Evaluations," "Writing Skills," and "Professional-Personal" on her KASA form.[26]  According to plaintiff, her clinical work grades were at a passing level.[27]  Nonetheless, Shalom received 70 points and thus received No Credit for COMSC 728.[28]

### C.   Shalom's Spring 2010 Grade Appeal

Shalom appealed her COMSC 728 grade to Marilyn Auerbach, the Acting Senior Associate Dean of the School of Health Sciences.[29]  Shalom also informed CUNY of Vogel's comments and her belief that she failed because she did not respond to him.[30]  The School of Health Sciences grade appeals committee reversed Shalom's failing grade for COMSC 728.[31]

### D.   Shalom's Fall 2010 Semester

In Fall 2010, Shalom registered for COMSC 729 under the

---

[25]   *See* Shalom Dep. at 83.

[26]   *See* Def. 56.1 ¶ 24.

[27]   *See* Pl. 56.1 ¶ 23.

[28]   *See* Def. 56.1 ¶¶ 23, 25.

[29]   *See id.* ¶¶ 26-27.

[30]   *See* Pl. 56.1 ¶ 27.

[31]   *See* Def. 56.1 ¶ 28.

supervision of Diana Bousel and Robin Westle.[32]  In mid-November 2010, Vogel sent Shalom emails concerning incidents when Shalom misplaced items, including client charts and papers containing sensitive information.[33]  Shalom claims that Vogel's emails were based on false reports.[34]  According to defendant, these emails were similar to those Vogel sent to other students.[35]  Vogel also spoke to Westle regarding such incidents.[36]  Bousel and Westle each gave Shalom below a 3.0 on three of the four categories in the KASA form.[37]  Shalom received a final score of 59 points, thereby receiving a "No Credit" grade for COMSC 729.[38]

### E.    Shalom's Fall 2010 Grade Appeal

Shalom appealed her COMSC 729 grade.[39]  She believed she received this grade because Vogel intervened in the grading process when he spoke to

---

[32]    *See id.* ¶¶ 30-31.

[33]    *See id.* ¶¶ 32-33, 53.  *See also* Ex. 2 to Vogel Decl. (emails from Vogel to Shalom).

[34]    *See* Pl. 56.1 ¶¶ 32-33, 53.

[35]    *See* Def. 56.1 ¶ 33.

[36]    *See id.* ¶ 34.

[37]    *See id.* ¶¶ 37-39.

[38]    *See id.* ¶¶ 36, 40-41.

[39]    *See id.* ¶ 42.

Shalom's supervisors about Shalom – which Westle acknowledged had an impact on her grading – and that Vogel was ultimately responsible for the final grade.[40] According to defendant, Shalom's failing grade was based on the KASA forms and Shalom's failure to adhere to the SLP Program's professional standards and confidentiality rules.[41]

The appeal was denied by both the School of Health Sciences grade appeals committee and the Hunter College Senate grade appeals committee.  As a result, Shalom was required to retake and pass COMSC 729 in order to continue in the SLP Program.[42]  Shalom requested and received a leave of absence for both the Spring and Fall 2011 semesters.[43]

F.     **Investigation By the Sexual Harassment Awareness Committee**

In January 2011, Shalom met with John Rose, Hunter College's Dean for Diversity and Compliance and Coordinator of the Sexual Harassment Awareness and Intake Committee, and complained that Vogel had "predetermined" that Shalom would fail her clinical practicum, had sexually harassed her, made

---

[40]     *See* Pl. 56.1 ¶ 58.

[41]     *See* Def. 56.1 ¶ 40.

[42]     *See id.* ¶¶ 43-44.

[43]     *See id.* ¶ 45.

false accusations about her, and inappropriately discussed her work and grade appeals with her supervisors.[44]

Subsequently, Rose and Erica Peterson, a Counselor in the Office of Student Affairs, conducted an investigation, and concluded that Vogel's communication with Shalom was appropriate and consistent with the relevant professionalism standards and therefore did not constitute sexual harassment or gender discrimination.[45]  Rose and Peterson also found that Shalom's clinical evaluations were not influenced by any comments or suggestions that Vogel might have made to Shalom's supervisors.[46]

### G.    Shalom's Article 78 Proceeding

On July 25, 2011, Shalom commenced an Article 78 proceeding in New York Supreme Court to challenge the Hunter College Senate grade appeals committee's decision to uphold her COMSC 729 grade for the Fall 2010 semester.[47]  Before a decision was reached, CUNY and Shalom agreed that Shalom could retake COMSC 729 in the Spring 2012 semester under the supervision of a

---

[44]     *See id.* ¶¶ 46-47.

[45]     *See id.* ¶¶ 48-50.

[46]     *See id.* ¶ 51.

[47]     *See id.* ¶ 55.

speech-language pathologist of her choice and Shalom's Clinic Director going forward would be Paul Cascella or faculty members other than Vogel.[48]

### H.    Shalom's Spring 2012 Semester

Shalom selected Lea Borenstein to be her supervisor for the Spring 2012 semester.[49]  Cascella was informed in February 2012 that Shalom had missed a client session, had left client and diagnostic materials in the room after the evaluation session had ended, and had interrupted another student's therapy session.[50]  Shalom disputes the truth of these allegations.[51]  Subsequently, Cascella investigated the complaints.[52]

Borenstein's mid-term evaluation of Shalom noted deficiencies in her clinical performance.[53]  According to defendant, these deficiencies would result in a failing grade at the end of the semester.[54]  CUNY permitted Shalom to withdraw from COMSC 729 without receiving any grade in Spring 2012, and granted her a

---

[48]    *See id.* ¶¶ 56-57, 67.

[49]    *See id.* ¶ 63.

[50]    *See id.* ¶ 68.

[51]    *See* Pl. 56.1 ¶ 68.

[52]    *See* Def. 56.1 ¶¶ 69-70.

[53]    *See id.*  ¶¶ 64-66.

[54]    *See id.* ¶¶ 65-66.

leave of absence until September 2012.[55]

### I.   Shalom's Subsequent Requests For Leaves of Absence

Shalom requested and received a leave of absence for the Fall 2012 semester,[56] but was denied a leave of absence for the Spring 2013 semester.[57] Although she has not been enrolled in an SLP course since Spring 2012, Shalom has not been dismissed from the SLP Program.[58]

### J.   Shalom's Complaints to the Office for Civil Rights

Shalom filed three complaints with the U.S. Department of Education's Office for Civil Rights ("OCR") none of which resulted in a determination against CUNY.[59]  The three complaints alleged that: (1) the COMSC 729 grade was in retaliation for her COMSC 728 grade appeal;[60] (2) CUNY retaliated against Shalom for filing her first complaint by delaying consideration of her request for a leave of absence in May 2012;[61] and (3) CUNY retaliated against

---

[55]   *See id.* ¶¶ 71-72.

[56]   *See id.* ¶ 73.

[57]   *See id.* ¶¶ 74-75.

[58]   *See id.* ¶ 76.

[59]   *See id.* ¶¶ 77, 81.

[60]   *See id.* ¶ 78.

[61]   *See id.* ¶ 79.

Shalom for filing the second OCR complaint by denying her a leave of absence through the Spring 2013 semester.[62]

## III.    LEGAL STANDARD

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[63] "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[64]

"[T]he moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle him to judgment as a matter of law."[65] "When the burden of proof at trial would fall on the non-moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go

---

[62]    *See id.* ¶ 80.

[63]    *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 692 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (other quotations omitted).

[64]    *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

[65]    *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).

-12-

to the trier of fact on an essential element of the non[-]movant's claim."[66]  The

burden then "shifts to the non[-]moving party to present specific evidence showing

a genuine dispute."[67]  This requires "'more than simply show[ing] that there is

some metaphysical doubt as to the material facts,'"[68] and the non-moving party

cannot "rely on conclusory allegations or unsubstantiated speculation."[69]

      In deciding a motion for summary judgment, "[t]he role of the court is

not to resolve disputed issues of fact but to assess whether there are any factual

issues to be tried."[70]  "'Credibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury functions, not those

of a judge.'"[71]

## IV.   APPLICABLE LAW

      Title IX provides:  "[n]o person in the United States shall, on the basis

---

[66]   *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[67]   *Id.*

[68]   *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[69]   *Id.*

[70]   *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[71]   *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."[72]  Defendant admits that it is subject to Title IX.[73]

### A.    Title IX Discrimination

#### 1.    Title IX Sexual Harassment Claim

"[S]exual harassment is a form of discrimination for Title IX purposes . . ."[74]  A "sexual harassment claim under Title IX requires proof of three elements: (1) the rejection of sexual advances; (2) a tangible school-related consequence; and (3) a causal connection between the two."[75]  "In the education context, a tangible consequence occurs when some benefit or adverse action, such as a change in a grade, is made to depend upon providing sexual favors to someone in authority."[76] Finally, for an educational facility to be liable, an official of the school "who at a minimum has authority to institute corrective measures on the [school's] behalf has

---

[72]    20 U.S.C. § 1681(a).

[73]    *See* Memorandum of Law in Support of Defendant CUNY's Motion for Summary Judgment at 10.

[74]    *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 649-50 (1999).

[75]    *Papelino v. Albany College of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) (quotations and alterations omitted).

[76]    *Id.*

-14-

actual notice of, and is deliberately indifferent to, the [official]'s misconduct."[77]

### 2.    Title IX Hostile Educational Environment

"[A] Title IX hostile education environment claim is governed by traditional Title VII jurisprudence."[78]   To hold defendant liable, plaintiff must prove that (1) that plaintiff subjectively perceived that environment to be abusive; and (2) "that [the environment] was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [her] educational environment" (*i.e.*, an objectively hostile or abusive environment).[79] "There also must be evidence that the alleged discrimination was carried out because of sex."[80]   "While the effect on a victim's psychological well-being is relevant to the subjective component in the analysis, its presence, or absence, is not dispositive on the issue of severity, as no single factor is required."[81]

"Sex-based hostile [educational] environment claims may be supported by facially sex-neutral incidents and sexually offensive acts may be

---

[77]     *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 277 (1998).

[78]     *Papelino*, 633 F.3d at 89 (quotations and alterations omitted).

[79]     *Id.*

[80]     *Hayut v. State Univ. of New York*, 352 F.3d 733, 745 (2d Cir. 2003) (quotations and alterations omitted).

[81]     *Id.*

facially sex-neutral."[82]   "[T]his requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory."[83]   A discriminatory motive can be proved by demonstrating that the alleged adverse action was a pretext for discrimination.[84]

A hostile educational environment claim "entails examining the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's academic performance."[85]

### B.    Title IX Retaliation

"[W]hen a funding recipient retaliates against a person because [s]he complains of sex discrimination, this constitutes intentional discrimination on the basis of sex, in violation of Title IX."[86]   Retaliation claims under Title IX are analyzed under the same "burden-shifting" framework set forth by the Supreme

---

[82]    *Moll v. Telesector Resources Group, Inc.*, Nos. 12 Civ. 4688 and 13 Civ. 0918, 2014 WL 3673357, at *1 (2d Cir. July 24, 2014).

[83]    *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002).

[84]    *See Reeves*, 530 U.S. at 147.

[85]    *Id.*

[86]    *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 174 (2005).

Court in *McDonnell Douglas Corp. v. Green*.[87]   A plaintiff claiming retaliation

under Title IX must first establish a prima facie case by showing: "(i) conduct by

the plaintiff that is protected activity . . .; (ii) of which the [school official] is

aware; (iii) followed by an adverse [educational] action of a nature that would

deter a reasonable [student] from making or supporting a discrimination claim; (iv)

that was causally connected to the protected activity."[88]

       With regard to the final element, "causation can be shown either: (1)

indirectly, by showing that the protected activity was followed closely by

discriminatory treatment, or through other circumstantial evidence such as

disparate treatment of fellow employees who engaged in similar conduct; or (2)

directly, through evidence of retaliatory animus directed against the plaintiff by the

defendant."[89]   "Close temporal proximity between the plaintiff's protected action

---

     [87]    *See* 411 U.S. 792 (1973).  *See also Platt v. Incorporated Vill. of Southampton*, 391 Fed. App'x 62, 64 n.1 (2d Cir. 2010) (stating that retaliation claims under the ADA and Title VII are analyzed under the same burden-shifting framework set forth in *McDonnell Douglas*); *Bastian v. New York City Dep't of Educ.*, No. 04 Civ. 7450, 2008 WL 2930529, at *7 (S.D.N.Y. July 29, 2008) (stating that Title IX retaliation claims are analyzed using the same *McDonnell Douglas* burden-shifting framework applicable to Title VII cases).

     [88]    *Cox v. Onondaga Cnty. Sheriff's Dept.*, No. 12 Civ. 1526, 2014 WL 3610747, at *5 (2d Cir. July 23, 2014).

     [89]    *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

-17-

and the . . . [adverse] action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action."[90]  "In general, periods greater than two months defeat an inference of causation."[91]  If a plaintiff establishes a prima facie case of retaliation, a presumption of retaliation arises and the case proceeds to the second step of the *McDonnell Douglas* framework.[92]

At the second step, "the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse [educational] action."[93]  If the court reaches the third step, "the presumption of retaliation dissipates and the [student] must show that retaliation was a substantial reason for the adverse [educational] action.  In this regard, a retaliation claim follows the familiar burden-shifting framework developed to evaluate allegations of disparate

---

[90]     *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

[91]     *Doner–Hedrick v. New York Inst. of Tech.*, 874 F. Supp. 2d 227, 246 (S.D.N.Y. 2012).

[92]     *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) ("If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action.") (quoting *McDonnell Douglas*, 411 U.S. at 802).

[93]     *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citations omitted).

treatment."[94]

## V.    DISCUSSION

### A.    Title IX Discrimination[95]

Shalom's Title IX discrimination claim rests on two theories – sexual harassment and hostile educational environment.  Because one of the elements of a Title IX sexual harassment claim is rejection of sexual advances, and Shalom concedes that Vogel never made any explicit or implicit sexual advances to her,[96] her discrimination claim based on that theory fails as a matter of law.

A hostile educational environment claim is evaluated based on a totality of the circumstances.[97]  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.  Isolated acts, unless very serious, do not meet the threshold of severity

---

[94]    *Id.*

[95]    In addition to the sexual harassment and hostile educational environment theories discussed below, plaintiff appears to plead a disparate treatment theory by alleging that Vogel engaged in a pattern and practice of discrimination against Shalom due to her gender.  Defendant moves for summary judgment on this theory, arguing that Shalom has failed to come forward with any evidence to support it.  Shalom does not respond to this portion of defendant's motion.  Accordingly, any Title IX discrimination claim based on a disparate treatment theory is dismissed.

[96]    *See* Shalom Dep. 99-100.

[97]    *See Hayut*, 352 F.3d at 745.

or pervasiveness."[98]

Plaintiff testified at her deposition that Vogel: (1) "did not want [Shalom] wearing [her] hair curly or in a ponytail;"[99] (2) did not like Shalom's clothes and told her that her clothes were "sloppy;"[100] (3) once requested that Shalom come to his office on a daily basis for a hair and clothing inspection;[101] (4) complained that the "women were all wearing pants instead of dresses" and that "Orthodox [Jewish] women in [the] program . . . were all wearing black instead of colors;"[102] (5) became angry when Shalom did not greet him in the hallway;[103] (6) told Shalom that she did not have the personality to be a speech language pathologist;[104] and (7) told Shalom that she would "see what would happen to [her]" if she complained about what Shalom considered to be sexual harassment.[105]

---

[98]   *Alfano*, 294 F.3d at 374 (citation omitted).

[99]   Shalom Dep. at 75, 80-81.

[100]   *Id.* at 75, 83.

[101]   *See id.* at 75, 83-84.

[102]   *Id.* at 76, 95-96.

[103]   *See id.* at 76.

[104]   *See id.* at 75, 79.

[105]   *Id.* at 156.

The incidents alleged by Shalom were neither severe nor pervasive. To the extent Vogel made any of the comments described above, Shalom's allegations appear to highlight singular incidents that do not rise to the level of severity or pervasiveness required to proceed on a hostile environment claim.[106] Further, Vogel's emails to Shalom, which she claims contributed to the hostile environment, are, to the contrary, professional and polite.[107]  While Shalom may have subjectively felt hurt or offended by Vogel's comments or emails, her subjective feelings are insufficient to show that Vogel's sex neutral statements had

---

[106]  *See, e.g.*, *Moll*, 2014 WL 3673357, at *4 (reversing district court's grant of defendant's motion to dismiss in a hostile work environment case where plaintiff received multiple sexually suggestive notes, phone calls, and invitations to come to her male supervisor's hotel room, was told that there was a "promotion freeze" even though two male colleagues were promoted, was denied vacation requests even though male colleagues with less tenure were granted the same requests, and was excluded from work-related social events including attending professional hockey games).

[107]  *See, e.g.*, 11/10/10 email from Vogel to Shalom, Ex. 2 to Vogel Decl. ("[O]ne of the first year students called to my attention that you left your mail and client's SOAP notes open on the clinic's computer today (the one by the copy machine).  Your Hunter mail account was immediately logged out to protect your privacy and the SOAP noted was deleted as we don't keep that Information on the computers permanently.  Please be careful in the future to help keep your personal and client's information secure and private."); 11/7/10 email from Vogel to Shalom, Ex. 2 to Vogel Decl. ("It seems that you lost track of one of your papers, which Mrs. Blinder found. Why don't we start to employ some strategies to help you keep organized with your clinical work? I'm at ASHA tomorrow through Saturday, but I'll be back in the clinic on Monday. How about if you and I touch base when I return and talk about these strategies and we can work together to help you.").

a discriminatory motive.  Drawing all inferences in Shalom's favor, no reasonable juror could conclude that CUNY, or its employees, created a hostile educational environment.

### B.  Title IX Retaliation Claim

It is undisputed that Shalom complained about Vogel's alleged harassment in June 2010, January 2011, and April 2011.  It is further undisputed that Shalom's failing grade in COMSC 729 during the Fall 2010 semester and the university's denial of her request for a leave of absence for the Spring 2013 semester constitute adverse educational actions.

However, Shalom has failed to establish the necessary causal connection between the complaints and the adverse actions.  Shalom's failing grade in Fall 2010 occurred several months after her first complaint, and the denial of her request for a leave of absence occurred nearly two years after her most recent complaint.  "A passage of years . . . is surely too temporally remote to establish causation."[108]  Further, the denial of Shalom's request for a leave of absence followed several instances where her request was, in fact, granted.

Even if Shalom were able to establish a causal nexus, CUNY has sufficiently articulated a non-retaliatory reason for both actions and Shalom has

---

[108]     *Apionishev v. Columbia Univ. in City of New York*, No. 09 Civ. 6471, 2012 WL 208998, at *9 (S.D.N.Y. Jan. 23, 2012).

failed to come forward with evidence to suggest that retaliation was a "substantial reason" for the adverse actions.  Based on several evaluations from numerous supervisors, Shalom's clinic performance was sub-par and insufficient to obtain a passing grade.[109]  Vogel's concerns regarding misplaced items and client privacy were valid considerations and appropriately raised with Shalom's supervisors. CUNY repeatedly accommodated Shalom's requests to work with different supervisors and her performance continued to be inadequate. Finally, it was within CUNY's discretion to deny Shalom's request for an additional leave of absence, especially in light of the numerous previously granted requests, Shalom's poor performance during the Spring 2012 semester, and her failure to articulate a reason for a continued leave.

## VI.   CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment on both Title IX claims is GRANTED.  The Clerk of the Court is directed to close this motion and this case.

---

[109]    *See* Def. 56.1 ¶¶ 65-66.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 13, 2014

**- Appearances -**

**For Plaintiff:**

Thomas A. Ricotta, Esq.
White, Ricotta & Marks, P.C.
86-12 37th Avenue
Jackson Heights, NY 11372
(347) 464-8694

**For Defendant:**

Steven L. Banks
Michael R. Klekman
Assistant Attorneys General
120 Broadway
New York, NY 10271
(212) 416-8610